UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at COVINGTON

CIVIL ACTION NO. 09-75-GWU

BILLIE JANE BULLOCK,                                                                  PLAINTIFF,

VS.                             **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                            DEFENDANT.

### INTRODUCTION

Billie Bullock brought this action to obtain judicial review of an unfavorable administrative decision on her application for Supplemental Security Income (SSI). The case is before the court on cross-motions for summary judgment.

### APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1.  Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2.  If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3.  The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of

        Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.     At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.     If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

    Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

    One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician

than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

09-75  Billie Jane Bullock

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  <u>Harris v. Secretary of Health and Human Services</u>, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.  <u>Id.</u>  Accord, <u>Johnson v. Secretary of Health and Human Services</u>, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  <u>Gooch v. Secretary of Health and Human Services</u>, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, <u>Hale v. Secretary of Health and Human Services</u>, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work.  <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work.

4

Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having

the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

09-75  Billie Jane Bullock

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Bullock, a 30-year-old woman with a "limited" education and no past relevant work history, suffered from impairments related to depression, anxiety, a social phobia, a learning disorder and borderline intellectual functioning. (Tr. 11, 14-15). Despite the plaintiff's impairments, the ALJ determined that she retained the residual functional capacity to perform a restricted range of work at all exertional levels. (Tr. 13). Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled. (Tr. 15-16). The ALJ based this decision, in part, upon the testimony of a vocational expert. (Tr. 15).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence . Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question presented to Vocational Expert Ralph Crystal included such non-exertional restrictions as (1) a limitation to simple tasks and instructions; (2) an inability to maintain attention and concentration for more than two-hour segments over an eight-hour day; (3) a limitation to task-oriented work settings where contact with supervisors and co-workers would be casual and infrequent; and (4) a need to avoid exposure to hazards. (Tr. 27-28). In response, Crystal identified a significant number of jobs in the national economy which could still be performed. (Tr. 28). Therefore, assuming that the vocational factors

considered by the vocational expert fairly characterized the plaintiff's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

The ALJ dealt properly with the evidence of record regarding Bullock's physical condition. The plaintiff was treated at St. Elizabeth Medical Center in October of 2006 for a dental abscess. (Tr. 247). Long-term physical restrictions were not imposed by the staff. (Tr. 243-247). Records from St. Elizabeth from 2007 reveal treatment for a sprained wrist. (Tr. 310). Physical restrictions were not identified. (Tr. 308-325). Dr. Sudhideb Mukherjee, a non-examining medical reviewer, opined that the plaintiff's physical problems were "less than severe." (Tr. 228). This opinion is not contradicted in the record by another treating, examining or reviewing source. Therefore, the ALJ dealt properly with the claimant's physical condition.

Substantial evidence also supports the ALJ's findings with regard to Bullock's mental condition. The plaintiff's treating staff at NorthKey Community Care did not identify the existence of more severe mental limitations than those found by the ALJ. (Tr. 248-307). Psychologist Mark Kroger examined the claimant and diagnosed a mood disorder, a possible learning disorder, and borderline intellectual functioning. (Tr. 202-203). Kroger indicated that Bullock would be "moderately" limited in handling complex instructions, relating to others, tolerating stress or work pressures and accepting criticism. (Tr. 204). The limitations concerning stress or

work pressures and accepting criticism were not presented to the vocational expert. However, Social Security Ruling (SSR) 85-15 states that when a claimant suffers from only mental impairments, then only a "substantial" loss of ability to handle simple instructions, respond appropriately to supervision, co-workers and usual work situations, or to deal with changes in a routine work setting would preclude performance of a significant number of jobs.  The plaintiff has not raised an issue concerning the omission of these mental restrictions from the hypothetical question. Therefore, these restrictions would not appear totally disabling and any error by the ALJ in omitting them from the hypothetical question would appear harmless.

Psychologists Stephen Scher (Tr. 206-209) and Larry Freudenberger (Tr. 224-227), the non-examining medical reviewers, each reported that Bullock would be "moderately" limited in dealing with detailed instructions, completing a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable length and number of rest periods, interacting appropriately with the general public, accepting instructions and criticism from supervisors, getting along with co-workers and not exhibiting behavioral extremes, and responding to changes in the work setting.  These restrictions are also somewhat more severe than those found by the ALJ but would not impose the type of "substantial" loss of ability which would preclude all work activity as indicated by SSR 85-15.  Therefore, these reports also do not support the plaintiff's claim of total disability.

09-75  Billie Jane Bullock

Bullock argues that the ALJ erred by failing to consider her past disability claim and the IQ scores which were obtained during the processing of that application. The plaintiff was awarded Child's SSI in November of 1993 and these benefits were terminated in June of 2002. (Tr. 107). The claimant notes that Intelligence testing administered in 1990 when she was 12 produced a Verbal IQ score of 66, a Performance IQ score of 73 and a Full Scale IQ score of 68 while intelligence testing in 1993 when she was 15 produced a Verbal IQ score of 60, a Performance IQ score of 81 and a Full Scale IQ score of 69. These scores would be within the range required to meet the requirements of § 12.05C and § 12.05D of the Listing of Impairments concerning mild mental retardation. Bullock notes that despite a request that the prior file be incorporated into the record (Tr. 91), these earlier scores were not introduced and not considered by the ALJ. However, while these earlier reports were not made part of the current record, the ALJ did discuss the fact that the earlier file contained intelligence testing with IQ scores within Listing range. (Tr. 14). Thus, this earlier information was not totally ignored. Furthermore, the administrative regulations state that intelligence does not stabilize until the age of 16 and testing administered before the age of 16 is not considered to be valid for more than two years. 20 C.F.R. Chapter III, Part 404, Subpart P, Appendix 1, § 112.00(D)(10). The Appeals Council did discuss the issue of the earlier IQ scores and specifically indicated that they were not sufficiently current to be considered on

09-75  Billie Jane Bullock

the current claim. (Tr. 2). Therefore, these earlier scores would not be binding on the administration.

Kroger administered intelligence testing during the processing of Bullock's current claim. This testing produced a Verbal IQ score of 72, a Performance IQ score of 77 and a Full Scale IQ score of 72. (Tr. 200). These scores were all in the borderline range and above that required to meet 12.05C or 12.05D. The ALJ properly relied upon this evidence to find that the plaintiff did not meet requirements of the Listing.

The undersigned concludes that the administrative decision should be affirmed. Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 12th day of February, 2010.

Signed By:
*G. Wix Unthank*
**United States Senior Judge**